We'll start the morning with two admissions. Judge Chan will make some motions. Yes. Thank you, Judge Newman. Would the two of you stand, please, and approach the podium? That's close enough. Thank you, Judge Newman. Good morning. I'd like to move the admission of two individuals to our bar. First, I move the admission of Elena Marie Witt, who is a member of the bar and in good standing with the highest court of Illinois. And I have knowledge of her credentials and am satisfied that she possesses the necessary qualifications. Also today, I'd like to move the admission of Chanson Chang, who is a member of the bar and is in good standing with the highest courts of New York and the District of Columbia. I also have knowledge of his credentials and am satisfied that he possesses the necessary qualifications. I know all of these things because these two individuals have been clerks of mine for over a year, and I've been working with them every day. And I'm convinced that they have the high character and are excellent lawyers, have terrific analytical abilities, and have protected me from making any mistakes over the past year. And I'm confident that we as a court will be proud to have them as members of our bar. Well, thank you. The panel will vote. What is your vote, Judge Stahl? I vote yes. And your vote, we assume, is yes? Yes. And my vote is yes. Welcome, both of you, to the bar of this court. Please raise your right hand and face the clerk who will administer the oath. We solemnly swear or affirm that you will comport yourself as an attorney and counsel of this court, uprightly and according to law, and that you will support the Constitution of the United States of America. I do. I do. Welcome to the bar of the United States Court of Appeals for the federal circuit. Thank you. Welcome to the bar of the United States. Thank you. Now, down to business. We call the first case. Number 151346, SAS Institute against compliments of LLC. Mr. Marra. Good morning, Your Honors. And may it please the court, I'll focus on two issues this morning. The first, the claim construction regarding Claim 4. And secondly, the sufficiency of the final written decision of the board. So first, as to Claim 4, the board committed both an error of substance and an error of procedure. On the substance, the board failed to apply the broadest reasonable interpretation of the claim term, graphical representations of data flows. The board instead imported a definition from the specification of a different term, data flow diagram. And the board required that Claim 4 include data processing icons and arrows. That's not consistent with the specification or the broadest reasonable interpretation of the specification. And that was the only basis for the board's patentability finding regarding Claim 4. So we're asking the court to reverse that construction and reverse the patentability finding. But even if the court affirms the board's construction of that claim term, we're asking for a remand to the board. Because the board did not adopt that construction until the final written decision. And SAS had no opportunity to address it. In fact, that construction was not offered by either of the parties. It was not a term that had been disputed at the time of the final written decision. The construction that the board gave us in the final written decision was totally unexpected. In fact, earlier in the IPR, in the institution decision, and this is at A173, the record, the board signaled to the parties that the graphical representations in the claims, and there are several recitations of graphical representations, did not require any icons or arrows, let alone the specific icons and arrows that the board ultimately read into Claim 4. So throughout the IPR, after the institution decision, the parties did not address any icons or arrows. That was not an issue that was in play during the IPR. The patent owner, in its preliminary response, did put forward a claim construction for data flows or graphical representations of data flows that related to icons and arrows. Isn't that right? That is correct, Your Honor. That was with respect to Claim 2, the graphical representations of flows depict data flows. That's correct. And in the institution decision, the board determined that icons and arrows and many of the other limitations that the patent owner wanted to read into the claim term were not required. So the patent office said, again, at A173, graphical representations are described more broadly in the 936 patent, not limited to icons and arrows. It's basically just a picture or a graph that depicts something. What sort of evidence would you put in on remand on icons and arrows? I would expect, Your Honor, that we would point back to the specific places in the prior art already of record, perhaps expert testimony, to identify where these very specific kinds of icons that the board said were required are found in the prior art. Because there's no dispute that the prior art that we relied upon, the code reference in particular, and that's code COAD, includes icons and arrows. The board found Claim 4 patentable because we didn't show a specific kind of icon, an icon depicting a data processing step. I guess the concern I have is that in your request for rehearing to the board, as well as your short request in your briefing, there's no real meat to the request for remand. You suggest in a broad conceptual way that you would like to have a second crack at proving unpatentability under this claim construction, but you don't really explain what you would do or what you would really accomplish from it. You just say you deserve a second chance. And so I'm trying to put myself in the board's shoes. It feels a little nebulous what you really want. Well, what you would really do. And at the time that we requested rehearing from the board, your honor, realized that we couldn't put in any new evidence or arguments at that time. We were very limited in what we could do. I'm just pointing out that so far, even up till today, I haven't really seen or heard what I would consider a concrete road map of what your expectations would be or what you would actually do. Well, I would expect upon remand to the board, and this is only if the court were to affirm the construction that the board adopted in claim four, and we're asking the court to reverse that construction. But if remanded and required to show that the prior art demonstrates the elements of claim four as construed by the board, I would expect we'd have some abbreviated procedure in the patent office. We're in uncharted territory here. We'd have some abbreviated procedure in the patent office where the parties would perhaps submit supplemental briefing. There may be some supplemental expert declarations to allow the parties, to allow SAS, to identify where it is in the prior art these very specific icons are shown, where the icons depicting data processing steps are in the prior art. And that's the opportunity we never had before in front of the patent office. Code doesn't have that, right? Code does have, in fact, in our papers we explain that code does have icons depicting data processing steps. We do believe that is the case. And we put that in our request for rehearing to the board, and the board did not address that. The board just said we're not going to reconsider our claim construction. But the whole point is whether icons are necessary for graphical representations of data flows. And in the request for rehearing, that would have been your time to say, oh, well, if that's what you understand the claim to require, well, the code reference has it right there. I don't know that that would have been proper, again, given the limits on what we were permitted to do at the time in front of the board. Would the board have considered that to be new evidence or new arguments? We certainly would have made those new arguments, or pointed to those portions of the code reference, had the board granted our request for rehearing. But they did not grant the request for rehearing. Well, the grant for request for hearing, isn't it built and predicated on the content of the arguments you make in your request for rehearing? And the substance of our argument to the board was that you gave us a new claim construction. Nobody saw this coming. Give us a chance. Let us put in evidence and arguments directed to the prior art to show you where the elements of this new claim construction are if you're going to maintain that claim construction. What made you think that it would be improper to put that in the request for rehearing? To put, Your Honor, to put in the specific. Like, for example, column 8, lines 2 through 10, or wherever it is in the reference that you would be relying upon. Well, again, we were operating under the rules of the board, which are very strict, certainly at the time of the oral hearing, that they will not allow any new evidence or any new arguments by the parties. So we thought the proper procedural approach  or any new arguments. That's why we did it. Do you have a specific rule in mind? I understand. I'm thinking of the trial practice guide, I'm thinking of, Your Honor, which very clearly lays out that at the time of the oral hearing, no new evidence and no new arguments. So we're asking for a remand on claim 4, again, if the board maintains, or if the court affirms the board's construction of the data false claim term. We're also asking for a remand on claims 2 and 11 through 16. And this is the partial final written decision issue. And our arguments here really parallel the arguments that have been made to another panel of this court in the synopsis mentor appeals, of which Judge Newman you were a part. And our basic position is this, that if an IPR is instituted, as it was here, then the board is required to issue a final written decision as to the patentability of any patent claim challenged by the petitioner. And how do we determine what any patent claim challenged by the petitioner is? We look to other parts of the statute. Section 312 of the statute identifies the requirements for the petition. And in the petition, it requires that the challenger identify each claim challenged. It's a two-stage process, right? We have the petition stage, and then we have the trial stage. So yes, you're referencing us to a section about the first stage. But the final written decision is in the context of the second stage. And then in 318A, I believe the premise of that provision begins with something like, if an IPR is instituted, then the board shall write a final written decision on every claim challenged. And in the context of stage two, in the context of that provision, why isn't it reasonable to say that it's requiring a final written decision on all the claims challenged that have been instituted and are actually part of the trial, not part of the now discarded stage one petition phase? You're correct, Your Honor, that 318A does begin with, if an inter partes review is instituted, and that means, has the petitioner met the threshold of showing at least one of the challenged claims, a likelihood that they will prevail as to at least one of the challenged claims. So at that point, if the PTO makes that determination and exercises its discretion to institute the IPR, then we have to determine what was any patent claim challenged by the petitioner, and that we look back to the petition. So if there are 100 claims in a patent, and the petitioner petitions on all 100 claims, and the patent office grants an IPR on just claim 44, and then writes a final written decision on claim 44, I guess it's your view that the patent board actually has to write a final written decision on patentability of all 100 claims. That is our position, Your Honor. If the board makes the threshold decision as to that there's a likelihood they will prevail as to at least one challenged claim, and the board institutes the IPR, then the requirement of 318A is clear that they must issue a final written decision. The board must issue a final written decision as to any patent claim challenged by the petitioner. Just stepping back from a moment, I know you want to really zero in on a hypertextual treatment, but why would there be logic in that outcome of this hypothetical I just asked? The logic of the outcome is that by addressing in the final written decision all the claims challenged by the petitioner, we have the certainty of one track. The petitioner is the master of the petition and decides what claims to challenge. The petitioner decides for these challenged claims, I know that if an IPR is instituted, that I'm either going to get a determination in the patent office, or I'm going back to district court on those challenged claims. So in your view, now that's very interesting. I thought your position was contrary. So in your view, the estoppel, the statutory estoppel, would apply to all of the claims? Only to the claims for which there is a final written decision, Your Honor. And in the, in the, in the. Well, the claims that are not instituted. How can they get into the final written decision if they're not instituted? And here, Your Honor, you're correct. So what we end up with here is some claims instituted, some claims in the final written decision, some claims not. So in this situation, for example, we'll be going back to the district court with some claims having estoppel, some claims having no estoppel. And that was not the intent of the statutory scheme. The statutory scheme was intended to have certainty. Either the claims that get challenged are decided in the patent office by the experts in the patent office, or all the claims challenged by the petitioner are decided in district court. This mixed bag, or this piecemeal approach to the claims challenged, was not the intent of the statute. Let's hear from the other side, and we'll save you a little time. Thank you very much, Your Honor. OK, Mr. Topic, let's pursue this front, because I observe that in your brief, the regulations allow your supporting the partial institution, and say, does not require the board to waste its resources for claims that there's no reasonable chance of invalidation. But then, so you're willing to give up, again, the statutory estoppel for claims that go through the formalities. Does this mean, in your mind, that they can go back and sue you in the district court on these claims? It's not my understanding that the estoppel would attach unless there was a final written decision. Now, as to statutory estoppel, whether there's other common law estoppel theories, or things that we might pursue. It comes up here, and then we decide on the claim that's been instituted, and there are these other claims out there someplace. So you would forego any estoppel as to any of the other claims. I don't believe that there is an estoppel that would attach if there wasn't a final written decision on those claims. So I don't, I mean, I'd love to have the estoppel, of course. It's in the statute. But I don't think that's there. It's in the statute. Of course, on this procedure, it seems to me that it would be absent, which surprised me in terms of endorsing such a procedure, if, in fact, it's so clear cut that these claims are valid. Right. And again, Your Honor, I think there are other ways, potentially, to make estoppel arguments other than the statutory estoppel, just sort of common law principles of estoppel. But from my view, this turns on the word challenged. And whether in the context of a final written decision, does challenged mean anything that the petitioner raised initially? Or does it mean what is challenged properly at that point in time? And if the board decides that the petitioner didn't meet the threshold in order to institute, then it hasn't been properly challenged. And for the most part, therefore, the statutory estoppel does not kick in for those claims that were petitioned for but are not instituted. If there has not been a final written decision, then the language of the statute doesn't call for a statutory estoppel. So what's the point of this new America Invents Act? You go back to the district court, you just have another couple of years of litigation, enormous expense, which perhaps delay is a factor. We appreciate nothing is this simple. At the same time, isn't that exactly what was supposed to be forestalled? I think that was the hope. But this is sort of the result of a petitioner filing a petition that doesn't adequately address all the claims. And so I think the system works fine if the petitioner is really truly able to challenge all the claims. And when they're not able to really truly challenge all the claims, you do get these results where it's sort of a mixed bag of things. And so the appropriate way to handle it would be don't file the IPR petition. There's no requirement that somebody accused of infringement has to file an IPR. It's obviously become extremely common. But in a case like this where there's some claims where there's good arguments and others that there aren't, then the resolution would be let's just deal with all of them in district court. And I think the remedy here, if the court decided that partial institution is not allowed, is I think it needs to go back to the board in the first instance and re-decide whether it's a good use of board resources to institute it all. And if only some of the claims can be dealt with and others can't, well, maybe the board will decide that it's a better use of its time and resources, which are limited, and which face tight deadlines to get these done, to say, petitioner, you've only made out of cases to half of these claims. We're just going to deny institution altogether because it's not worth a claim. That's what the statute says. The statute says all you have to do is show that one claim is more likely than not invalid. But it also places discretion in the board to decide whether to institute, and the decision whether to institute. It doesn't say to institute as to that one claim. It says to institute. But it still leaves discretion to the board when it will institute or not, and that decision is not reviewed by this court. It doesn't sound like what's in the legislative history for this procedure, that for the other claims, you can go to the district court. Do you think that that's what the legislators had in mind? You can litigate a couple of claims in the office, appeal it up here, and so then one side or the other is stopped. They're both bound by the decision of the office as to that claim. And for the others, you go back to the district court. I think that's the impact of how the legislation has been written. But we'll ask Mr. Piccolo, because it's publicity when this was enacted. Well, I agree. I think what we have is a circumstance where the supposed intent or the possible intent hasn't really played out in the way that it's been drafted, in the way that it's been instituted. The courts are for, aren't they, to assure that the legislative intent is fulfilled. If the board has got it wrong, it's our obligation, is it not, to get it right? But we're still limited by the language of the statute, which says that there's review for any challenged claims. And so whether the intent actually is fulfilled in the language of the statute, we still have the language of the statute, which doesn't allow for judicial review of claims where there was an attempt. It doesn't say you can institute as to, you can take some claims out of the system. All the statute says is that if you show more likely than not in validity as to one claim, you grant the petition. But it still leaves the discretion to look before. Or you can deny the petition. Correct. But it doesn't say you can grant or deny what you feel like. Well, I think then if we would be left, again, going back to the board in the first instance to decide whether on these facts it wanted to institute, where it could only institute on some claims but not on all claims. You do otherwise end up with the situation exactly as Your Honor had pointed out. If there's 100 claims and only one has some change, it may be one that's not even at issue in the litigation. Then 99 claims, the board has to spend time dealing with all for the sake of one claim for which an argument's been made. Why is this different from previously with respect to ex parte re-exams and re-issues, for example, at the patent office? The patent office would consider the patentability of all the claims. Once a decision was made to consider the re-examination, for example, why is it different here? Is it because there you had examiners that started the process, and here it's adversarial system? That could be. I don't know the answer to why this was written this way versus the way it was written for the prior system. Is that true for re-examinations, that if a re-exam is granted on one claim in a 100 claim patent, then the PTO is going to do a re-examination on all 100 claims, regardless of whether it deemed there to be a substantial question of patentability on those other 99 claims? So I confess I don't know the answer to that question. The patent office in their time may know the answer to that, but I just confess I don't know what the answer to that is, unfortunately. I wanted to address also claim four and the arguments made as to claim four. So it's not clear to me based on the argument whether petitioners continuing to argue for a new construction, different from the construction in the institution decision which they had argued for in their brief. For the reasons set forth in our brief would oppose that. There is no basis to raise a brand new construction on appeal that hadn't been proposed below. It is substantively different. They're attempting to remove the word executing from the construction. So this isn't just some minor little tweak or variation. Let's remove the procedural argument you're raising, and let's just assume that they would be very happy with the construction that the board announced in its institution decision. So now what's wrong with that interpretation? What's wrong with the original institution? Well, the problem is that there's no showing that there's prior art that meets that construction. I think that the construction the board ultimately reached was the right one. It pointed to the language in the specification for that specific limitation, which was the visualizer. And that's what it relied on in reaching that construction. As a disclaimer, suppose for the sake of this procedural conversation, we decide that the board was wrong and that they did disclaim the object-oriented language. What happens? If there is a finding that object-oriented language is outside the scope of a data manipulation language, then there hasn't been a showing for any of the claims that they're invalid. And so you would need to reverse. Yeah, the claims aren't before us. You say any of the claims so they can go to the district court. I was sloppy in my language. I apologize. I meant the claims for which there has been a final decision, the claims that we've cross-appealed on, that that finding would need to be reversed, that object-oriented languages, whether there's embedded SQL or not, are outside the scope of the data manipulation languages used in these claims. So as to all those claims that had been invalidated by the board, that should be reversed. And those claims should stand. And we will go back to district court with a stopple on those claims. OK. I think, yes, you get another chance. Let's hear from Mr. Piccolo. I have some questions for him. Thanks. Thank you. Thank you, Your Honors. And may it please the court, to Your Honor, Judge Newman's inquiry about the stopple. You know what's bothering me. There is no stopple. For this case, in the board's, in the office's position, there is no stopple? That's what I would have thought. There is no stopple as to the claims that the board declines to consider. So they can go back to the district court on those claims no matter what. So what's this elaborate procedure for if we can't resolve the issues as the legislator says was their intent? Well, Your Honor, I would say to that that there's no command from Congress to resolve the whole patent. There's no command not to. Suppose they just thought, as Judge Stoll and as I thought was the procedure, which goes into re-exam, you re-examine. And that this is supposed to be even better, in that it's got finality? Your Honor, about re-exam, I don't think, I'm not positive, and I would be happy to submit a letter to the court afterward. I don't think all claims have to get re-examined. And some basis on it. Send us your view on that. Because we haven't. In 304, it talks about resolving the question. And right in the first sentence of section 304, it says that there has to be a substantial new question of patentability affecting any claim. And then the re-examination is ordered addressing and resolving that question. So the question was, what claims were found to be connected to a substantial new question of patentability? And then resolution of that question. Here, similarly or regardless, the statutory scheme here is clear. The language is quite different. It says that if any claim is more likely than not invalid, that goes farther than substantial question, then the board can decide, or the examiner who's ever doing it, can decide whether or not to institute the petition. Let's say that the petition challenges the entire patent. Isn't that the only choice that's available to the office? No. But do we grant the petition or deny it? Respectfully, no, Your Honor. Congress didn't say that. And the PTO's promulgation, which it was given wide authority to promulgate regulations, and that's found in section 316. The office's rule on institution, rule 42.108, which has been used many, many times by the office and has come up at various points in litigation, that the patent office, the board, has to find a reasonable likelihood affecting as to the petition, what was submitted in the petition. And this rule expressly says, all, some, or none. All, some, or none can go into the IPR. So you open the gate. You don't have to put any in. Or if there's a reasonable likelihood, some go in. And in this case, claims 2 and 11 to 16, the board, and this court should not address that question, but the board had ample reason to close the gate on claims 2 and 11 to 16 because of things such as not pointing properly specifically enough to the prior art and construing means limitations to get to structure in complement softs patent specification. So those claims were far different than claims 1 and 3 to 10 that the board did let into the room of IPR through the gate. And the parties hotly contested those claims, which resulted, and wisely so, in a final decision by the board. And that's what these parties are now on appeal, the merits of those claims. No. Well, I'm trying to figure out the legislative intent, however it should come out. And it just seems, from everything that the legislators thought that they were doing, that their intention was to move the patent. We've been, it's understood, even if you have 200 claims, it's only one invention per patent. If there's more than one, then you restrict the patent. So you have one invention, however it's claimed 200 different ways. So if any one of those claims is more likely than not invalid, found at the threshold at the institution. And the petitioner has requested, let's narrow it, the petitioner has requested review of all of the claims. I'm trying to understand whether the legislative purpose is, nonetheless, to cut back on resolving the issues as to that patent. So that you can spend a few years before the office, plus an appeal here, and whatever other petitions you want, but you can't go to the district court. And everyone seems to agree that you can go back now to the district court to where you were a few years ago, and start again with the other claims. There's no estoppel. There's no admission against interest. There's nothing. So meanwhile, the patent is expiring. You think that's what the legislature's had in mind, or you think they just didn't think about it? Your Honor, respectfully, Congress, it's clear that Congress wanted to assist district courts by streamlining patentability determinations, going back to the PTO. And any streamlining or simplification assists district courts. This isn't even admissible or evidential. There's no estoppel. For claims 1 and 3 to 10, there is. Because they went through the IPR process and were resolved in a final written decision by the agency. I guess the question is whether you think that Congress had intended and expected that the agency would chop IPR petitions in half so that it would only go forward on the merits on half of a patent, and then throw back the other half of the patent at the district court so that, in effect, you would have litigation in two different forums. Or do you think that Congress really expected litigation with respect to a certain patent would truly be resolved in one form or the other, either the PTO or the district court, but not have this two-part, two-stage process that the agency has now created with its rulemaking? Thank you, Your Honor. 35 U.S.C. 314 does not require the Patent Board to institute IPRs. My question is more, what do you and the agency think? Do you think the Congress contemplated this outcome, that this was their intent? Yes, Your Honor, because, for example, as we discuss in our brief, there's legislative history from Senator Kyle, for example, that the PTAB and there's express statutory authority. We could stop having these proceedings if we need to catch up. It's better to not have them. So there was wide-reaching discretion for the agency about instituting part or some, or not instituting many, in order for us to try to complete these challenging proceedings within a year. And Congress was very interested that, one, the petition shows a reasonable likelihood, and two, that the proceeding could be done and the PTAB could handle it. We're getting hundreds and upwards over thousands of these over the last couple of years. Sure, but that point is just about whether to do an IPR or to elect not to do an IPR, sort of an all or nothing question. What we have in front of us today is something that looks more piecemeal, at least with respect to this particular IPR and several other IPRs. So the question is, is there something you can point to that Congress expected that outcome? Well, it's permitted by the statute. I think, Mr. Piccolo, if you look at what Senator Kyle kept saying over and over, he was saying that these decisions would move from the district court to the office, not half and half. And this is what I find so troubling about this. To try and get it right, we understand, with sort of a gossipy perhaps, that district courts that might in the past have stayed their actions because of what's happening in the office are taking a different position. And that it isn't quite working out, as it seems some of the legislators thought. Well, this is a difficult and, I think, important question. Let's think after we hear the rest of the arguments whether further briefing might help to try and straighten it out once and for all. If I could say one point, Your Honor. Go ahead. That the initiating statute, 35 U.S.C. 314, has enough breadth to permit the agency to construe it the way it has. Our construction, and under Chevron, has been a permissible construction to promulgate rules which are consistent with cases of this court, such as St. Jude, Dominion Dealer, and Quozo, that we have authority. And our institution decisions are not revealable by this court. So I want to reemphasize the lack of reviewability and the breadth in the statute to give us Chevron deference on choosing how we are going to implement the statute that we administer. OK. My other question, I'm sorry to ask, is SAS's procedural argument that it was blindsided by a new claim construction by the board in its final written decision, and it requested to be given a shot at putting on a case with respect to that new construction. Let's just say, hypothetically, the patent board institutes a fresh, brand new claim construction in a final written decision in an IPR, one that neither party really expected. Is it your view that APA due process, there are some expectations and requirements for the agency in an instance like that to somehow reopen the record? Perhaps in a very limited way, but nevertheless, provide both parties a meaningful opportunity to explain their case under this very fresh new claim construction? Thank you, Your Honor. The board's rehearing rule permits any party, and I'm specifically looking at 37 CFR section 42.71d, any party to request rehearing. The party has to be dissatisfied with the decision, so I think what you just talked about, either party would have a chance. And I'm familiar with this rule, that the party in a rehearing request should show, and the rule is very clear on what should be the meat in the rehearing request, that the party. And it's not that, I guess, hard to do if the board really maybe did something it shouldn't have, because the rule says the party could discuss points that the party believes the board misapprehended, which I think goes to that sequence of events, or overlooked, which may go to some missed evidence. The rehearing request rule is a very good pre-appeal rule, that if the board did something that was misapprehended, if it misapprehended something, or overlooked something, a party has a clear regulatory chance. And people should take advantage of this rule if they truly think that something maybe popped up or was overlooked. So I think- Let me ask it differently. I'm sorry. Go ahead. If the board, in a final written decision, wrote a rejection of a claim that everybody would recognize is a new ground of rejection, a new grounds of unpatentability, certainly you wouldn't say, yes, they get to do that, and that's the end of the game, and the patent owner's out of luck, right? You are very comfortable in agreeing with me that the agency would give the patent owner or the applicant in an instance like that an opportunity to go back and try to put on a case for patentability in light of this new ground of unpatentability. I agree, Your Honor. So now my hypothetical, relevant to this case, is what if the board issues in its final written decision in an IPR a new ground of patentability? Based on a brand new claim construction. And so my question to you is, in a situation like that, should the petitioner be given an opportunity, like a patent owner would in the prior hypothetical, to go back and put on a case for why, under that new ground of patentability, why nevertheless the claims are unpatentable, now that the petitioner understands what the board thinks about the scope of a given claim? So what's the answer to that? That's an interesting question, Your Honor. I'm going to give a couple of quick, which I hope are helpful, thoughts. And that is, we do have a new ground of rejection rule that makes it non-final, and the applicant or aggrieved party can come back. I'm not aware of, and I think we don't have, a new ground of patentability rule. But I respectfully submit that 37 CFR section 42.71d aptly takes care of that situation. Because my argument to the board would be that, honorable board, you misapprehended my claim construction, the other party's claim construction, any reasonable claim construction. Here is what, because I've been advocating, and maybe there's some estoppel or something that I've been saying, you get to restate your claim construction or appeal that what was done below was just the wrong claim construction. It was unreasonable. So I see two outs as to that, and there may be a third. But one would be directly request re-hearing, and two would be appeal that it was an unreasonable claim construction. Right, but they don't have the third option to also argue, even if you disagree with my renewed claim construction arguments, I should have an opportunity to pursue an unpatentability theory under this brand new claim construction. I've now thought of a third possibility, maybe arrow in the quiver, and that is that the agency head has authority under 37 CFR 1.181 to 183 to superintend the office or grant petitions in extraordinary circumstances. If I were the aggrieved person on the other side or whatever, I would be researching and establishing a petition along that line to maybe reopen it. But it does sound like an extraordinary circumstance where justice requires that something be done as a third possibility. I get back to, I think my top item to pursue would be a request for re-hearing. My next item would be an appeal to this court, and then maybe do all three or do the petition before appealing or something. But a petition to the agency head or to the board. It's been delegated to the chief administrative patent judge. And there may be a way to stop. I think what's critical is to stop the appeal clock and possibly get some better communication between the parties and the board. But I would also say that re-hearing is well-suited to that. I do have a question. When you say re-hearing is well-suited, I think the point that was made was that in a request for re-hearing, there's no opportunity to present new evidence. And there have been some cases that have come before us where the PTAB has said, you can't point to a different column in this patent because that's new evidence. You pointed to column three before. Now you can't point to column six. So what about the position that when the argument is that the claim construction has changed, and now I want to point to a different part of a reference, or maybe my secondary reference, for example, in an obviousness combination, how do I do that? How do I get the opportunity to do that when initially the board said the claim construction was one thing, and now it says it's something else in the final decision? I would assume arguendo or pitch the board's claim construction and say, now I have, under the Administrative Procedure Act or something, every right and opportunity to remake my argument, including pointing to evidence already of record. I mean, I would have no problem laying all that out and saying that the board's claim construction the construction that the board applied, here's my answer to it with evidence of record. My construction, board, you misapprehended. You should retreat and go to my construction. But I think, in a sense, if it's a new construction, not posited by either party, then there could be a door opening. But the rehearing request would be a great vehicle for that, that the door was opened by the board with this new claim construction. I think, board, you misapprehended, and you overlooked other evidence that relates to this claim construction. So I could see a reasonable rehearing request being made, given those factual predicates. What if the decision on the hearing request doesn't even address this issue? It says, no, I got the claim construction right, but it doesn't even address whether there should be an opportunity for new evidence to be presented. Well, that would be part of the agency's action, subject to appeal. I would hope that the board, I think the board has a fair amount, not a long period of time, to address it. But I would hope that, between the three APJs, they would try to dot all the I's and cross all the T's, that what is now being requested is fully addressed. Because maybe it just might lead to relief being granted. So I hope that's just a hypothetical, and that doesn't happen. OK. Thank you, Mr. Ticcolo. We're glad to have you here. We've been saving a lot of questions for you. Thank you, Judge Lillard. I would say, Mr. Murlock, you have five minutes for rebuttal and the cross-appeal. Thank you, Your Honor. Let me start by saying, Judge Shannon, I think that the process that you just described is exactly what we have here. We have a brand new claim construction at the time of the final written decision that SAS did not have an opportunity to address. And it is akin to a new ground of patentability. And I did not hear an answer from my friend from the government as to what we should have done, other than file a request for rehearing, which is what we did. Right. And I'm still frustrated why your request for rehearing didn't do more, or say more, in response to the alternative construction the board adopted, and explain why even under that claim construction, if that's the playing field, then this is why the prior art of record still renders this claim obvious. And again, Your Honor, I think we're limited by the rules of the board at that point. What we were allowed to say, the evidence and arguments, would be considered new arguments. We thought the better procedure was to ask for permission to do that. You had a new construction. The playing field changed. At least, that's the position you had now. That's the position you had then. Under looking at this claim in a new light, as the board did, that was your time to step forward and say, OK, if this is what you really think the claim means now, then this is why even that claim is no good. Which is what we would have done had the board granted our re-hearing request. We didn't want to bake into the re-hearing request itself, basically grant our own re-hearing request by having the board consider everything we put into the single paper. We thought the proper procedure was ask for permission to submit the evidence and the arguments directed to the new construction. And we also, don't forget, in the re-hearing request, we were asking the board to undo the claim construction. So that was a significant part of the re-hearing request as well. I think, Judge Chen, you're hypothetical that you asked me about if there's 100 claims in a patent and the patent office only decides or issues a final written decision as to claim 44. Then I think I heard my friend from the patent owner agree that perhaps in that situation, the best thing for the board to do is just deny institution. That if the board makes the assessment at the outset that sufficient showing is not made as to all the challenge claims, then maybe the decision should just be a threshold no, and we're not going to institute the IPR. That would be more consistent with the legislative history and the statutory construction, and would give us the certainty in district court that we're looking for, but also lead to more streamlined petitions, less kitchen sink type petitions. To your point, Judge Newman, we do think the legislative intent is clear, and it's clear in the statute itself. When section 318A says, any patent claim challenged by the petitioner, we think that very clearly means the claims that the petitioner elected to challenge in the petition, and that's what the board's final written decision must address. Do you agree that Chevron deference is due to the PTO's interpretation of 318? We do not, Your Honor. First of all, we don't believe that the PTO really has, there is any rule or regulation to which the PTO is interpreting that particular statutory section. They are saying that our rule that allows partial institution goes to section 312, that they have discretion to whether to institute. There really is no PTO rule or regulation directed to 318 itself. And even if there were, we don't believe it's due any deference, because it's contrary to the clear statutory intent. But it seems to me that your position, in some ways, is predicated on the idea that if one claim gets granted IPR, all claims get granted IPR. And then that does sort of come into tension with 316, which has provisions about how the agency has been granted authority to set up standards and procedures for conducting these IPR proceedings. And they've done that. And they've done that through rule by saying, we're only going to actually review on the merits those claims that we have found that it's more likely than not that the claims are unpatentable in view of the petition. So that's where I could see Chevron deference coming in, or the question of whether there should be Chevron deference to this rulemaking. You're correct, Your Honor, that under 316, the patent office does have authority to adopt rules and regulations for the conduct of the IPR. But that discretion, to the extent they have it, does not extend so far as to violate the statute. And we think what they have done in allowing institutions or issuing final written decisions that don't address all of the challenged claims, that's directly contrary to 318. So their discretion does not extend that far. OK. And if the court has no questions on the cross appeal for me, I will rest on the papers on that. Thank you, Mr. Verlich. Thank you. Just so I can confirm, on the cross appeal, that's data manipulation language? That was the data manipulation language and the graphical representation of flows within the retrieved source code to claim construction issues that my friend for the patent owner has appealed? OK, thank you. Mr. Topic, you want to argue with Mr. Piccolo? Argue with Mr. Piccolo? No, I would probably not argue with Mr. Piccolo. I mean, I understand my rebuttal time really should be on the cross appeal. I do have some comments on their appeal. I'd be happy to make, however you prefer. Well, a part of their appeal is that they should be given a second crack to go after claim four under the board's new construction of data flows. And if it really is a new construction, why shouldn't they be given that chance? Sure. So first, I think they could have addressed this in rehearing. There was nothing that stopped them from saying you've overlooked these parts in these references. We're not talking about an instance where they could find new art or things like that. I mean, they were limited by what prior art they were looking at. It must be an issue of explaining to the board why what they pointed to for the original construction also applies under the new construction. If we look at what they're relying on in their brief now, they're attempting to say a message flow is the same as a data flow because message equals data. And if you look in the briefs and look at what they're actually relying, what they're saying they would really be presenting to the board, it doesn't show what they say that it shows. And so it really evens out. I agree they've been a little vague, but I guess they are saying they'd like to go back to their expert and have their expert explain why perhaps it was common knowledge in the art for these graphical representations to have icons, that icons aren't that big of a deal when it comes to these IDEs. And you have also the issue of icons for data processing steps, which I think might be more of an issue. But I think they're still limited by what those references actually show. And I don't think they've pointed to anything that would make any difference. And let's not forget, the remedy that they're asking for here really is to propose an entirely new construction that is not the construction from the original institution. It's a new and different construction. But the question, I think, is whether if we were to affirm the board's construction, whether they should have an opportunity to present under that construction. So your comment about the claim construction and what they're trying to argue, I don't think that's what they're trying to argue. What they're saying is that if we were to affirm the claim construction, they want an opportunity to present evidence on that claim construction. Right. So as to that issue, again, they had the opportunity to move for a re-hearing. And I think I would also point out they argued in the argument leading up to the final written decision that it would have been perfectly appropriate for the board to construe claims for the very first time in the final written decision, which presents the same issues as a changed construction. Either way, you're left in a situation where the parties just have to do their best to look at the constructions that we started with. Where else could that go? And put forth all the evidence that gives a record that would allow for a decision. But you're positioned that once there's an original construction, because here this is different, the board said, this is how I construe this term in its initial decision. And then from then on, the parties are supposed to assume that that's not set in stone. I must present evidence under alternative constructions as well. Is that your position? Yes, and I think that's why they've said that it would have been appropriate for the board to issue brand new constructions in the final written decision. You otherwise end up in a situation where we kind of keep going back and keep going back. If they wanted to have a process with a Markman hearing followed by a trial, that's what would happen in a district court. When you have the limited time period for an IPR to get done, it has to be done a little bit differently. And to keep going back any time there's a modification to an original claim construction, and we're not talking about something that's completely out of left field, or that wasn't found in the specification, or anything like that, then the opportunity is really in the rehearing motion to point to whatever evidence they had developed. But at the same time, I'm sorry, I do have another question. Well, one more. Sure. We need to move on. Where during the entire trial phase did your side ever press the claim construction that the board actually adopted in the final written decision? Because I didn't find it. Right. So that's why it seems to me it's really came up with it on its own. I think that's true. OK. I don't think ultimately it's so terribly different that it requires going through the process all over again. OK. Thank you. Thank you. All right. Thank you. Thank you all. The case is taken under submission.